

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

*Tamera L. Fine*
*Assistant United States Attorney*
*Tamera.Fine@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4806*
*MAIN: 410-209-4800*
*FAX: 410-962-0716*

April 4, 2016

Liz Oyer, Esquire
Office of the Federal Public Defender
100 S Charles St. Tower II, 9th Floor
Baltimore, Maryland 21201

    Re:    <u>United States v. James Cicala, ELH-15-0532</u>

Dear Ms. Oyer:

    This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted on April 15, 2016, it will be deemed withdrawn.

    The terms of the agreement are as follows:

### Offense of Conviction

    1.     The Defendant agrees to plead guilty to Count One of the Superseding Indictment which charges him with Interstate Travel with Intent to Engage in a Sexual Act with a Minor, in violation of Title 18, United States Code, Section 2423(b). The Defendant admits that the Defendant is, in fact, guilty of this offense and will so advise the Court.

### Elements of the Offense

    2.     The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

        a.   that on or about the date charged in the Superseding Indictment, the Defendant traveled in interstate or foreign commerce; and

        b.   that the Defendant acted with the intent to engage in illicit sexual conduct.

### Penalties

    3.     The maximum sentence provided by statute for the offense to which your client is pleading guilty are as follows: imprisonment for not ~~less~~ more than thirty (30) years, followed by a

1

term of supervised release of not less than five years and not more than life and a fine of up to $250,000. In addition, the Defendant must pay $100 as a special assessment pursuant to Title 18, United States Code, Section 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order the Defendant to make restitution pursuant to Title 18, United States Code, Sections 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to Title 18, United States Code, Section 3572(d), the Court orders otherwise. The Defendant understands that if the Defendant serves a term of imprisonment, is released on supervised release, and then violates the conditions of supervised release imposed by the Court, the Defendant's supervised release could be revoked—even on the last day of the term—and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

4.      The Defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to Title 18, United States Code, Section 2250.

### Waiver of Rights

5.      The Defendant understands that by entering into this agreement, the Defendant surrenders certain rights as outlined below:

a.  If the Defendant had persisted in a plea of not guilty, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.  If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.  If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.  The Defendant would have the right to testify if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

2

e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against the Defendant. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights the Defendant is giving up and about the facts of the Defendant's case. Any statements the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find the Defendant guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if the Defendant is not a citizen of the United States, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including defense counsel or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

6.    The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at Title 18, United States Code, Sections 3551-3742 (excepting Title 18, United States Code, Sections 3553(b)(1) and 3742(e)) and Title 28, United States Code, Sections 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

7.    This Office and the Defendant understand, agree and stipulate to the following Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt and to the following applicable sentencing guidelines factors:

a. **Base Offense Level:** The parties stipulate and agree that the base offense level is twenty-eight (28) pursuant to U.S.S.G. § 2G1.3(a)(3) because the plea agreement in this case contains a stipulation that the defendant committed the crime of  Attempted Enticement of a Minor under 18 U.S.C. 2242(b). *See* U.S.S.G. § 1B1.2.

b. **Use of Computer:** Pursuant to U.S.S.G. §2G1.3(b)(3)(B), there is an increase of two (2) levels because the offense involved the use of a computer or an interactive computer service to persuade, induce, entice, coerce or facilitate the minor to engage in prohibited sexual conduct.

c. **Obstruction of Justice:** The government believes that an enhancement of two (2) levels, pursuant to U.S.S.G. §3C1.1, may be appropriate because the Defendant willfully obstructed or impeded, and attempted to obstruct and impede, the administration of justice with respect to the investigation, prosecution, and sentencing of the instant offense of conviction, and the obstructive conduct related to the Defendant's offense of conviction and any relevant conduct. The Defendant contests this enhancement. Since this plea agreement is pursuant to Rule 11(c)(1)(C), the government agrees to forego seeking this enhancement.

d. This Office does not oppose a two-level reduction in the Defendant's combined adjusted offense level, based upon your client's apparent prompt recognition and affirmative acceptance of personal responsibility for your client's criminal conduct. This Office intends to make a motion pursuant to U.S.S.G. §3E1.1(b) for an additional 1-level decrease, assuming your client continues to accept personal responsibility for your client's conduct up to, and through, sentencing. This Office may oppose any adjustment for acceptance of responsibility if your client (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about your client's involvement in the offense; (d) is untruthful with the Court, this Office or the United States Probation Officer; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his guilty plea.

e. Thus, the final anticipated adjusted offense level is 27, after the anticipated adjustment for acceptance of responsibility and without any enhancement for obstruction of justice.

8.      The Defendant understands that there is no agreement as to the Defendant's criminal history or criminal history category, and that the Defendant's criminal history could alter the Defendant's offense level if the Defendant is a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.      This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

9.      The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

## Agreement Pursuant to Rule 11(c)(1)(C)

10.     In exchange for the government's agreement to allow the Defendant to plead guilty to Count One of the Superseding Indictment and the Defendant's plea of guilty to Count One, the parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that the following sentence is the appropriate disposition of this case:   84 months imprisonment,

*15 years*

followed by ~~lifetime~~ supervised release.  This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release in addition to that specified herein.  In the event that the Court rejects this plea agreement, either party may elect to declare the agreement null and void.  Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

## Obligations of the United States Attorney's Office

11.    In exchange for the Defendant's plea of guilty to Count One of the Superseding Indictment pursuant to this plea agreement, this Office agrees to dismiss Count Two of the Superseding Indictment which charges him with Attempted Enticement of a Minor, in violation of 18 United States Code, Section 2422(b), a count which carries a mandatory minimum sentence of 10 years.

12.    Should the Court reject this plea agreement and either party chose to withdraw from the plea agreement pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5), this Office will not dismiss any counts of the Superseding Indictment.

## Waiver of Appeal

13.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal his conviction.  Both the Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal a sentence of 84 months incarceration, as well as whatever fine or order of restitution that may be imposed, and any issues that relate to the establishment of the advisory guidelines range.  The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.  The Defendant further waives any and all motions, defenses, probable cause determinations, objections which defendant could assert to the Superseding Indictment or to the Court's entry of judgment against the Defendant, as well as imposition of sentence upon the Defendant consistent with this agreement.   If Defendant files a notice of appeal, notwithstanding this agreement, Defendant agrees that this case shall be remanded to the district court to determine whether Defendant is in breach of this agreement and, if so, to permit the United States to withdraw from the plea agreement.

14.    The Defendant may withdraw from the agreement if the Court wishes to impose a sentence in excess of 84 months incarceration and the government may withdraw if the Court wishes to impose a sentence below 84 months incarceration.  In the event that the Court rejects the plea, but neither side wishes to withdraw from the agreement, then nothing in this agreement shall be construed to prevent either the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), and appealing from any decision thereunder, should a sentence be imposed that is illegal or that exceeds the statutory maximum allowed under the law or that is less than any applicable statutory mandatory minimum provision.

## Obstruction or Other Violations of Law

15.    The Defendant agrees that the Defendant will not commit any offense in violation of federal, state or local law between the date of this agreement and the Defendant's sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this

agreement which would justify a finding of obstruction of justice under USSG §3C1.1, (ii) fails to accept personal responsibility for the Defendant's conduct by failing to acknowledge the Defendant's guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw the Defendant's guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

16.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulations set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing.

## Forfeiture

17.     The Defendant agrees to forfeit all right, title and interest in the following property seized by law enforcement authorities on August 15, 2015 and to take whatever steps are necessary to pass clear title to those properties to the United States, including the following property:

      a.     2007 Ford Edge (Black), VIN: 2FMDK48C57BA77730, MD Registration: 8BW3204, registered to James Eugene CICALA without lien.

      b.     Contents of 2007 Ford Edge listed above, including spare LG batteries and earrings brought as gifts for "Sydney."

## Entire Agreement

18.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: Tamera L Fine
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

4-19-2016
Date

James Cicala

I am James Cicala's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

4|19|16
Date

Elizabeth Oyer, Esq.

**Attachment A**
**Factual Stipulation**

*If this matter had proceeded to trial, the government would have proven the following beyond a reasonable doubt. The Defendant agrees that the following facts do not encompass all of the facts that would have been proven had this matter proceeded to trial.*

1.      The Defendant, James Cicala, age 54, lived on Nodding Night Court in Columbia, Maryland and owned a beach house in Fenwick Island, Delware. The Defendant was a career employee of the United States Department of Justice, having worked providing information technology support for the Criminal Division for over two decades. From March 2015 through at least July 21, 2015, the Defendant placed multiple ads with Craigslist in the Delaware, Maryland and District of Columbia editions. The advertisements sought females to engage in "daddy-daughter" relationships with the Defendant.

2.      The Defendant placed one such ad on Craigslist on or about July 21, 2015. Included in the advertisement was a photo depicting a mature white male in an affectionate embrace with a young teenaged female. The advertisement solicited "...a young, sexy female for Daddy/Daughter role play dates."

3.      On July 21, 2015, Detective Corporal (Cpl.) Alex Kagan of the Worcester County Sheriff's Office began an investigation into Child Solicitation on Craigslist. Cpl. Kagan responded to the Defendant's ad entitled "Daddy's Little Girl." Cpl. Kagan, using the undercover name Sydney Taylor responded to the Daddy's Little Girl ad stating, "Hey my names Sydeny....Im prol too young but I gotta give u props for your add. Wish I had a nice Dad..lol." On July 21, 2015, at 3:24 PM Cpl. Kagan received a response from the Defendant stating, " Hi Sydney, how old are you sweetheart?"

4.      The next day, July 22, 2015, at 1:41 PM Cpl. Kagan responded, stating, "Heyy.... Im gonna b 16 in may, u." The Defendant responded: "Wow, what a coincinence! ███ ██████████████████████ I will be 50 soon, but I don't look it. Where are you located? Are you near the beach?

5.      The Defendant subsequently sent messages to "Sydney" stating that he wanted to be her "internet daddy" and that his user name was "DaddyJay12345." Cicala also sent a message stating, "I wish I could adopt you. Your new daddy would protect and defend you and treat you like the princess you are. hehe."

1

6.      The above correspondence precipitated numerous text messages (approximately 2400) between the Defendant and "Sydney" from July 21, 2015 until August 15, 2015, when the Defendant traveled from his beach residence on Fenwick Island, Delaware to Berlin, Maryland to meet "Sydney" at a previously determined location.

7.      Both the email communication and the text messages were conducted by the Defendant using his DOJ-issued laptop and iPhone. Although many of the messages contain references to the Defendant being at work, the bulk of the messages were sent in the late evening or early morning hours when the Defendant's family was asleep.

8.      The messages quickly turned personal and sexual. On July 23, 2015, at 3:56 PM Cpl. Kagan, at the request of the Defendant sent the Defendant a digitally created photograph of a young female standing on the beach. Within minutes The Defendant responded: "OMG, you are adorable!"

9.      On July 24, 2015, at 10:56 PM Cpl. Kagan received a text message from phone number 202-531-8732 (the number assigned to the Defendant's DOJ-issued iPhone) stating, "Are you a virgin? If that makes you uncomfortable, don't answer." On July 24, 2015, at 10:57 PM Cpl. Kagan, posing as "Sydney" responded to the text, "Omg....yes....u aren't gonna talk 2 me r u..."

10.     The Defendant almost immediately began promising gifts to "Sydney," leaving presents at a prearranged location in Berlin, Maryland on two occasions. After he left the first gift (a $20 bill), he texted "Sydney:" "if you were with daddy right now, how would you show appreciation for your surprise? "Sydney" responded to the text, "I would do whatever you wanted. Definitely a big kiss n hug." The Defendant responded: "That's exactly what I would ask for! ha ha," followed by another text two minutes later stating: "Oh baby if only you were 18."

11.     On July 25, 2015, at 10:18 p.m., the Defendant texted "Sydney" stating, "Daddy really has become very close with u." Two minutes later he texted: "Daddy has desires and sometimes forgets you are only 15." A few minutes later the Defendant texted "I know it is taboo but I can't help my desire for u you have to delete this convo."

12.     The Defendant frequently engaged in sex chat with "Sydney" at work. On July 28, 2015, at 11:44 a.m., the Defendant texted, "I trust u with all my heart so I start kissing your lower below your neck I reach your chest I try to remove your bra but it won't come off you said

2

it's the permanent link of bra kind of bra sorry for my atrocious typing skills." Approximately fifteen minutes later the Defendant texted "Sydney," "hehe I don't know about you, but I am completely aroused! This is weird at work. If I had to walk down the hall, I'd prob get fired. Haha are you there or did you faint?" On another occasion, the Defendant quipped in an email: "Can you believe I'm at work and they are paying me?"

13. The Defendant quickly progressed to planning a meeting with "Sydney," initially scheduled for August 1, 2015.

14. On July 31, 2015, at 9:47 p.m., the Defendant texted "Sydney," "I can't wait to eat you tomorrow." He confided: "I have not been with another female besides mommy for over 20 years" and asked "Sydney": "Have you done anything like this before." He promised to bring her a pair of earrings which she had picked out at his request. The previous day, July 30, 2015, the Defendant had promised to take "Sydney" shopping, as well as a first "deep, wet, passionate kisss" in the "back of my roomy, cozy SUV" where "Daddy shows you how much he really luvs you."

15. In fact, the Defendant traveled from his beach house in Delaware to Berlin, Maryland on August 1, 2015, but "Sydney" was a no-show, later claiming to have been unable to come because she had been with her Aunt and wasn't able to get away.

16. Throughout these text message exchanges, "Sydney" had refused to send sexually explicit photos or engage in sexually explicit chat. When she failed to arrive at their meeting place, the Defendant texted about his disappointment and frustration: "First no naughty pics. Then no sexting and now to LG." (LG is a texting abbreviation for "Little Girl.")

17. The texting continued as the Defendant made arrangements for another meeting, this one on August 15, 2015. The Defendant frequently attempted to engage "Sydney" in sexually explicit chat, instructing her to delete the message. He sent her nude and partially nude photos of himself. He promised her gifts, including the earrings and something for her phone.

18. On August 14, 2015, at 10:26 PM, the Defendant texted "Sydney," "R u Xcited to luv Daddy?" Minutes later he acknowledged, "This is naughty. Daddy could get in huge trouble." The Defendant texted a picture of a male exposing his penis, followed by "That's what u do to daddy I wish u could show me something."

19. On August 15, 2015, the Defendant traveled from his beach house on Fenwick Island, Delaware to a prearranged location in Berlin Maryland to meet "Sydney." When he

3

arrived he was arrested by local law enforcement. He had his DOJ issued cell phone, which he had used for sending and receiving the texts with "Sydney." In his SUV was bedding, pillows, a giftwrapped box with the promised earrings, and to LG cell phone batteries for the phone "Sydney" has told him she used.

20.     Both on August 1, 2015, and again on August 15, 2015, the Defendant traveled from Delaware to Maryland with the intent of engaging in sexual conduct with "Sydney," whom he believed to be a 15-year old female.

21.     Further, beginning in July 21, 2015 until August 15, 2015, the Defendant used a facility of interstate commerce to knowingly attempt to persuade, induce, entice and coerce a female under the age of to engage in any sexual activity for which he could be charged with a criminal offense.


I have read this Factual Stipulation and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. It accurately reflects what I did and what the government could prove I did. I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.


4-19-2016
_____
Date

_____
James Cicala


I am James Cicala's attorney. I have carefully reviewed every part of this Factual Stipulation, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.


4/19/16
_____
Date

_____
Elizabeth Oyer, Esquire

4